**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JEFFERY P. MCDONALD,

               *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

               *Defendant*.

_____/

CIVIL ACTION NO. 2:16-cv-14015

DISTRICT JUDGE DENISE PAGE HOOD

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 16, 17)

## I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that McDonald is not disabled. Accordingly, **IT IS RECOMMENDED** that McDonald's Motion for Summary Judgment, (Doc. 16), be **DENIED**, that the Commissioner's Motion, (Doc. 17), be **GRANTED**, and that this case be **AFFIRMED**.

## II.     REPORT

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Jeffery McDonald's ("McDonald") claim for a period of disability and Supplemental Security Income Benefits ("SSI") under Title XVI, 42 U.S.C. § 1381 *et*

1

*seq.* (Doc. 4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 16, 17).

On March 19, 2014, McDonald filed an application for SSI, alleging a disability onset date of April 5, 2013. (Tr. 211-16). The Commissioner denied his claim. (Tr. 68-82). McDonald then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on August 26, 2015, and December 9, 2015, before ALJ Ramon Suris-Fernandez. (Tr. 16-62).  The ALJ's written decision, issued December 15, 2015, found McDonald not disabled. (Tr. 83-101). On September 13, 2016, the Appeals Council denied review, (Tr. 1-6), and McDonald filed for judicial review of that final decision on November 11, 2016. (Doc. 1).

### B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See*

2

*Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.      Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:   If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to

last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two. 20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically

4

determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.     ALJ Findings

Following the five-step sequential analysis, the ALJ found McDonald not disabled under the Act. (Tr. 83-101). At Step One, the ALJ found that McDonald had not engaged in substantial gainful activity in since March 9, 2014, his application date. (Tr. 88). At Step Two, the ALJ concluded that the following impairments qualified as severe: degenerative disc disease, gastritis, obesity, a mood disorder, post-traumatic stress disorder and panic disorder with agoraphobia, as well as opioid dependence and substance abuse. (*Id.*). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 88-91). Thereafter, the ALJ found that McDonald had the residual functional capacity ("RFC") to perform sedentary work, except:

> [C]laimant cannot climb ladders, ropes or scaffolds. The claimant cannot tolerate exposure to hazards such as machinery or unprotected heights. He is limited to frequent kneeling and crawling. The claimant is limited to simple, routine tasks and short, simple instructions. Face-to-face interaction with the public, coworkers and supervisors is limited to occasional.

(Tr. 91). At Step Four, the ALJ found McDonald incapable of performing his past relevant work. (Tr. 96). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that McDonald can perform. (Tr. 96-97).

5

### E.      Administrative Record

#### 1.      Medical Evidence

The Court has reviewed McDonald's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.      Application Reports and Administrative Hearing

##### i.      Function Report

McDonald filled out a Function Report dated April 11, 2014, which appears in the administrative record. (Tr. 249-59). Describing his conditions, he noted severe back pain: "[C]an't lift, sit, stand, lay and walk [for] long periods of time." (Tr. 252). He also noted agoraphobia, severe social anxiety, depression, obsessive-compulsive disorder, attention-deficit disorder, bipolar disorder, and post-traumatic stress disorder ("PTSD"). (*Id.*). Each day he spent taking his medication, watching television, walking around in the yard, and cooking on occasion. The illnesses affected his sleep. (Tr. 253). He marked no problems, however, with personal care (*e.g.*, dressing, bathing, shaving, etc.). (*Id.*). He prepared his own meals daily, and the time it took varied depending on the meal. (Tr. 254). He also helped with household chores such as laundry and home repairs. (*Id.*). Throughout, his concentration inhibited his ability to complete tasks. (*Id.*).

Everyday, McDonald left the house, though he did not drive. (Tr. 255). He shopped for groceries with his mother on an infrequent basis. (*Id.*). He retained the financial capacity to pay bills, count change, handle a savings account, and use a checkbook/money orders. (*Id.*). As hobbies, he used the computer, read, and watched

6

television on a "fair" basis. (Tr. 256). Nevertheless, his conditions slowed him "down with my regular daily life." (*Id.*). He lived with his mother and talked on the phone daily, albeit "not [for] long periods." (*Id.*). On a regular basis, he rode in the car with a friend and attended church services with his mother. (*Id.*). He needed reminders to attend doctors' appointments. (*Id.*). In all, though, he described having an apathetic attitude: "I don't do much—have no interest." (Tr. 257).

Prompted to mark abilities with which he encountered difficulty, he marked: lifting, squatting, bending, standing, walking, sitting, stair climbing, memory, completing tasks, concentration, and following instructions. (*Id.*). He could walk for "[a]bout 1 block" before needing a rest, and could pay attention for "5-10 minutes." (*Id.*). Even so, he followed directions "fairly" well, though had "to be told a couple times" spoken directions. (*Id.*). In the past, he was fired from a job at McDonald's because "I couldn't be around a lot of people." (Tr. 258). He did not handle stress or changes in routine very well, and developed a "fear of disappointing friends or family." (*Id.*). He used a cane "when I feel unsteady" or suffered from "back pain." (*Id.*).

A Third-Party Function Report—filled out by Susan Stevenson, McDonald's mother—also appears in the record. (Tr. 238-48). The information provided therein is similar to and consistent with that provided in McDonald's own Function Report.

### ii.    McDonald's Testimony at the Administrative Hearing

McDonald's first hearing occurred on August 26, 2015. (Tr. 43-62). Near the opening of his testimony, he noted that his weight fluctuated frequently, depending in part on his medication. (Tr. 47). In the past, the majority of his work was "long haul

trucking, flat bed, hauling steel, where you had to, you know, climb, secure, chain, tarp your own load, and basically, if not that, I was doing construction labor, or any type of labor, work." (*Id.*). Asked how his back pain limits his ability to work, McDonald noted "I cannot lift, continuously lift. I cannot continuously bend at the waist, up and down, or at the knees, as far as that goes." (Tr. 49). He continued to describe the pain as "excruciating. Sometimes, I've fallen to the floor just on the elevator, on the way up here, the high speed almost took me to the floor, because I wasn't ready for it." (*Id.*). He did not have his cane with him at the hearing because "[i]t's at a friend's house." (*Id.*). The pain spread from his back "all the way up to my neck." (*Id.*). He could lift a gallon of milk, but not much more. (Tr. 50). He had not sought professional help or treatment for this pain in a while. (Tr. 51-52).

McDonald then addressed why he avoided prescription medication: "I was sexually abused, and I was fed pain killers and sleeping pills in my food, and was sexually abused while I became addicted to these pain pills. And, I took them for 12 years, every day, until I decided to stop, on my own." (Tr. 52). He elaborated on why his mental issues were work-preclusive: "I can't work. I'm 40 years old. I'm single. I have no children. I've been committed to psychiatric wards three to four times. No family, no friends, no permanent housing for five years. There's time I stay in my bedroom, which may be at a friend's house, or, you know, just under a bridge somewhere, and just stay and don't come out for couple weeks at a time. I urinate in gallon jugs, because I'm agoraphobic. And, I am diagnosed PTSD, bipolar II. It's just makes me not want to live."

8

(Tr. 54-55). He experienced crying spells "[e]very day." (Tr. 55). He suffered flashbacks and nightmares. (Tr. 56).

McDonald's living situation was split "[b]etween three different places, a friend, a cousin, and my mother." (Tr. 57). He helped with chores to the extent he was physically able: "I can [mow the grass], but I hurt. . . . [I]t takes me all day to do a sink of dishes, . . . ." (*Id.*). He spent most time sitting and standing. (Tr. 58). "[O]n the homeless side, you know, I've had to walk the streets. I've had to sleep in the dirt under the bridges. And now, I'm facing new illnesses, like my feet are swelling up to where I can't even fit my shoes on, so, I'm ready to go to the doctor and address some problems." (Tr. 59). He noted that he should "get a new MRI" due to a number of new health issues that had arisen. (*Id.*). Due to ulcers and other gastrointestinal issues, he felt "[a] lot of nausea." (Tr. 60). After a short off-the-record conversation, the hearing was concluded and a supplemental hearing was agreed upon. (Tr. 61).

McDonald's second hearing occurred on December 9, 2015. (Tr. 16-42). The ALJ opened the hearing by asking about McDonald's weight and past work over the past fifteen years. (Tr. 22-23). McDonald noted that at a certain point "I was homeless, living under a bridge, I had to accept" a job at McDonald's "and I didn't know that I wouldn't be able to maintain the job due to my mental disability and my physical disability. It was close quarters, working with a lot of people, and lifting, which I was not aware of." (Tr. 24). Summarizing: "I'm diagnosed agoraphobic, bipolar, and severe stress and anxiety, so with that, and my back and knee and ankle, I can't hold a job." (*Id.*).

McDonald then elaborated a bit on his physical condition. His back pain derived from degenerative disc disease and a cyst. (Tr. 24-25). His pain "comes and goes, but if . . . I sleep in the wrong position, then all day, it's constant pain." (Tr. 25). "Lifting, walking, bending," and "[s]tanding for long periods of time" exacerbated his pain. (*Id.*). And repetitive lifting, no matter the weight, could also cause problems. (Tr. 26). Because of his past substance abuse, he used only over-the-counter pain relief, which worked to a certain extent. (Tr. 27). He also noted "a constant burning pain in the shoulder, left shoulder blade that's been going on for a couple months, but, I just had three MRIs and ultrasounds, you know, from the last 45 days, so, with that, and coming up, the detoxing off the medications in the last two to three months, I'm doing quite a bit of isolating more than anything." (Tr. 33-34).

His participation in treatment proved fleeting at times. "I haven't been seeing my latest medical provider, so I've been cold turkey off of three, four major meds, so I've sort of been detoxing, isolating myself, you know, in my one little bedroom." (Tr. 28). His "fear of being close to others" had gotten worse. (Tr. 29). He indicated that urinating in "jugs or containers" was typical behavior for him. (*Id.*). Medication helped him control such conduct: "[D]uring the time when, you know, I was taking the meds which made me feel, you know, where I could go to church and see my pastor on Sunday, or go to the grocery store, it was all right. But, when you run out. [. . .]" (Tr. 30). His mother controlled his medication at the time of the hearing. (Tr. 31-32).

The cane he used did not belong to him. "I didn't know if I could bring it to court, . . ." (Tr. 32). After reviewing McDonald's past work once more, the ALJ questioned him

as to his back pain. (Tr. 36). Until the cyst developed, he would stretch to ease back pain, but at the time of the hearing "I can't lay in a bed at night. . . . I'm like a fish flopping all over the place, trying to get to sleep." (Tr. 37). And in light of insurance issues, "[a]ll of my meds that I'd been on for five, six, years, I totally just quit three months ago after [I stopped] seeing Dr. Gotlib. He was prescribing all of my medications." (Tr. 38).

### iii.      The VE's Testimony at the Administrative Hearing

In the ALJ's first hypothetical question, he described an individual "limited to sedentary work, no ladders, ropes, or scaffolds, no hazards such as machinery or unprotected heights, . . . Kneeling, crouching, and crawling is limited to frequent activity. Emotionally, limited to simple and repeating tasks and short and simple instructions, interaction with the public, face to face interaction with the public, coworkers and supervisors is limited to occasional activity. With these limitations, would this individual be able to perform the jobs listed earlier [as past work] for the claimant?" (Tr. 39-40). The VE noted that such an individual could not perform McDonald's past work, none of which is sedentary. (Tr. 40). Other jobs existed, such as "rotor assembler"—with 12,500 national job availabilities—"sorting machine operator"—with 22,000 national job availabilities—and "polishing machine operator"—with 29,000 national job availabilities. (*Id.*).

### F.      Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513.

11

"Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to

"other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

13

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482

15

U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

McDonald furnishes two arguments in the instant Motion: (1) the ALJ's Step Three determination as to Listing 12.04 lacks the support of substantial evidence, and (2) the ALJ failed to obtain a medical opinion regarding medical equivalency as required under SSR 96-6p. (Doc. 16 at ID 713, 719). I discuss each argument in turn.

### 1.    Step Three Determination

McDonald first posits that the ALJ's Step Three determination "neglects to properly analyze or explain why [McDonald's] impairments do not meet or medically equal Listing 12.04(A)(B)." (Doc. 16 at ID 714); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04. "Although the ALJ makes a finding for part B of the listing he does not consider part A, thus making his decision bereft of an actual discussion and analysis of Listing 12.04(A)(B)." (Doc. 16 at ID 715-16). This deficiency, McDonald argues, prevents meaningful review of the ALJ's Step Three determination, an error harmful precisely because "the record evidence leaves open the possibility that a Listing is met or equaled." (Doc. 16 at ID 718). To this, the Commissioner points out that where, as here, a plaintiff makes no argument as to the C criteria and "cannot meet the B criteria, his

impairments cannot meet the listing." (Doc. 17 at ID 731). In the Commissioner's view, the ALJ required no extra discussion, as his paragraph B findings are supported by substantial evidence.

In order for a claimant to meet Listing 12.04, he or she must satisfy the following the criteria set forth in paragraphs A and B, or A and C:

> A. Medical documentation of the requirements of paragraph 1 or 2:
> 　1. Depressive disorder, characterized by five or more of the following:
> 　　a. Depressed mood;
> 　　b. Diminished interest in almost all activities;
> 　　c. Appetite disturbance with change in weight;
> 　　d. Sleep disturbance;
> 　　e. Observable psychomotor agitation or retardation;
> 　　f. Decreased energy;
> 　　g. Feelings of guilt or worthlessness;
> 　　h. Difficulty concentrating or thinking; or
> 　　i. Thoughts of death or suicide.
> 　2. Bipolar disorder, characterized by three or more of the following;
> 　　a. Pressured speech;
> 　　b. Flight of ideas;
> 　　c. Inflated self-esteem;
> 　　d. Decreased need for sleep;
> 　　e. Distractibility;
> 　　f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
> 　　g. Increase in goal-directed activity or psychomotor agitation.
> AND
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning[:]
> 　1. Understand, remember, or apply information[.]
> 　2. Interact with others[.]
> 　3. Concentrate, persist, or maintain pace[.]
> 　4. Adapt or manage oneself[.]
> OR
> C. Your mental disorder in this listing category is 'serious and persistent;' that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder[;] and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life[.]

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.

In considering whether a claimant meets a listing, there is no "heightened articulation standard," and ALJs need not "spell[] out every consideration that went into" their conclusions. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Nor need the Step Three analysis sit squarely within the portion of an ALJ's decision expressly dedicated to its consideration. *See, e.g.*, *Snoke v. Astrue*, No. 2:10-CV-1178, 2012 WL 568986, at *6 (S.D. Ohio Feb. 22, 2012), *report and recommendation adopted,* No. 2:10-CV-01178, 2012 WL 1058982 (S.D. Ohio Mar. 28, 2012) ("[T]he Sixth Circuit has implicitly acknowledged that a court must read the ALJ's step-three analysis in the context of the entire administrative decision, and may use other portions of a decision to justify the ALJ's step-three analysis." (citing *Bledsoe*, 165 F. App'x at 411)). As provided in *Reynolds v. Commissioner of Social Security*, 424 F. App'x 411, 415 (6th Cir. 2011), even after deciding a listing is not met, an ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."

McDonald relies heavily on *Reynolds* in his brief for the proposition that an ALJ must consider all aspects of a listing in order to fulfill her duties at Step Three. But *Reynolds* requires no such thing. In fact, the Sixth Circuit remanded the ALJ's decision in *Reynolds* because he engaged in "[n]o analysis whatsoever . . . as to whether Reynolds'

18

physical impairments . . . met or equaled a Listing under section 1.00, despite his introduction concluding that they did not." *Id.* at 415. The court expressed no qualms as to the ALJ's evaluation of Listing 12.04, which mirrors the ALJ's analysis of the same in the present case:

> He then conducted a thorough analysis of [Listing 12.04] . . . conducting a full-page assessment of Reynolds' mental impairment. He compared her medical history and testimony to the Listing, assessing her 'activities in daily living,' 'social functioning,' 'concentration, persistence or pace,' and 'decompensation,' which tracks the criteria in that section. Such an analysis and conclusion regarding Reynolds' mental impairment *clearly meets the substantial evidence standard.*

*Id.* (emphasis added).

The ALJ's Step Three written analysis addressed only the paragraph B criteria of Listing 12.04. (Tr. 89) ("In making this finding, I have considered whether the 'paragraph B' criteria are satisfied."). The analysis that followed, however, plainly evaluated such criteria in the context of McDonald's severe mental impairments—namely, his "mood disorder" and "post-traumatic stress disorder and panic disorder with agoraphobia"— eligible to qualify as "Affective Disorders" under paragraph A of Listing 12.04. (Tr. 88-90) (describing McDonald's living situation, daily activities, occasional lack of hygiene, ability to focus on instructions, social activities and fears, financial responsibility, and hobbies). Later discussion in the opinion evaluates a number of factors relevant to the considerations present in Listing 12.04 as well, further nourishing the ALJ's Step Three reasoning. (Tr. 93-94) (recounting in the context of McDonald's RFC his past childhood trauma, periods of self-isolation, intervals of homelessness and unemployment, history of success with medication, brief slew of psychiatric hospitalizations, and opiate use, among

other things). This was sufficient clarity, and the ALJ's reasoning relies on substantial evidence. *E.g.*, (Tr. 70, 481) (recounting largely normal mental examinations); (Tr. 28, 632) (affirming that medication was helpful); (Tr. 352) (visiting the emergency-room after running out of medication); (Tr. 28-29) (attributing self-isolative behavior to going "cold turkey" on medication); (Tr. 479) (noting that McDonald "resides with his mother and her boyfriend in a house," "attends regular church services, is able to dress and shower himself," and "has reestablished a close relationship with a cousin"); *accord Baker v. Comm'r of Soc. Sec.*, No. CIVA08-15216, 2009 WL 6346545, at *10 (E.D. Mich. Dec. 31, 2009), *report and recommendation adopted,* No. 08-15216, 2010 WL 1463137 (E.D. Mich. Apr. 13, 2010) ("Plaintiff argues that . . . [the ALJ] did not fully consider the listing. . . . [because] although the ALJ discussed the paragraph 'B' criteria, he did not discuss the paragraph 'A' criteria. Defendant avers that Paragraph 'A' criteria deals with whether the diagnosis is present and the paragraph 'B' criteria deals with the severity of the impairment. . . . Defendant's argument is well taken. . . . Plaintiff's contention that this case should be remanded for further articulation of the paragraph 'A' criteria is unwarranted."); *see Gushen v. Comm'r of Soc. Sec.*, No. 16-CV-10003, 2017 WL 1807605, at *5 (E.D. Mich. Feb. 23, 2017) ("[T]he SSA [must] consider the Paragraph B functional limitations for each listing in light of the *specific mental disorder in Paragraph A of that listing*. Thus, in analyzing whether Gushen's limitations met Paragraph B of Listing 12.04 . . . the ALJ was required to consider the functional limitations that were the result of affective disorders.").

20

To an extent, McDonald's argument seems to suggest that because an ALJ might have decided the matter differently, his failure to explicitly address the paragraph A criteria warrants remand. (Doc. 16 at ID 718) ("[I]t is unreasonable to conclude that the ALJ's articulation error was harmless, since the evidence *could* reasonably meet or equal the relevant Listing/Listings."). As noted, however, the ALJ adequately discussed the severity of McDonald's mental impairments, and the court cannot second-guess decisions which rest upon support from substantial evidence of record. *See Reynolds*, 424 F. App'x at 414, ("[T]he court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *see also Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) ("[T]he ALJ's findings of fact should not be disturbed unless we are persuaded that his findings are legally insufficient.").

For these reasons, McDonald's argument on this ground remains unpersuasive and the Court should find it so.

## 2. Medical Equivalency

McDonald next urges remand due to the ALJ's reliance on an opinion from a medical expert who did not have an opportunity to review the full record. Under 96-6p, he avers, "the ALJ should obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the State agency medical consultant's finding that the impairment(s) was not equivalent in severity to any Listed impairment." (Doc. 16 at ID 720). Because the ALJ relied on a "DDS explanation" from July 21, 2014—which predated the submission of "multiple reports" and a

21

"supplemental hearing for new evidence which contained evidence" that "could reasonably be interpreted" as proving his impairments equivalent in severity to Listing 12.04—McDonald posits that the ALJ was required to obtain a new expert opinion on equivalency. (*Id.*).

In accordance with SSR 96-6p, 1996 WL 374180 (S.S.A. July 2, 1996), an ALJ "and the Appeals Council must obtain an updated medical opinion from a medical expert" when "additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Id.* at *4. This proves the case when, for instance, the consultative examiner makes no finding on equivalency—see *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) ("[T]he great weight of authority holds that a record lacking any medical expert opinion on equivalency requires a remand.")—or when the ALJ fails to clarify, implicitly or explicitly, why fresh records remain consistent with those upon which the consultative examiner relied. *Cf. Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 724 (6th Cir. 2012) ("Although the ALJ did not explicitly hold that an updated medical opinion was unnecessary, in light of his determination that the [new] records did not save Claimant's claim, he implicitly decided that the records would not change the opinions of the experts."). But the ALJ need not request an updated examination when a plaintiff "fails to identify evidence that would support a finding that he meets or equals a listing," and the ALJ does not "believe[] new evidence may suggest that [a plaintiff's] condition equaled the severity of any impairment

22

in the Listing of Impairments." *Freeman v. Comm'r of Soc. Sec.*, No. 14-CV-11146, 2015 WL 404332, at *11 (E.D. Mich. Jan. 29, 2015).

McDonald does not elaborate on what these "multiple reports" are and why this new evidence could have modified the State agency medical consultant's finding. His citations only direct the Court to the supplemental hearing, without any accompanying argumentation. As the Sixth Circuit has observed:

> There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior decision untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (quoting the magistrate judge's opinion). In the instant case, the ALJ considered this new evidence—expressly discussing most of it—and found it wanting. (Tr. 90) (discussing exhibits B5E, B4E, and B12F); (Tr. 92) (discussing exhibits B8F, B9F, and B12F); (Tr. 93) (discussing exhibit B12F); (Tr. 94) (discussing exhibits B9F and B12F); (Tr. 90-95) (discussing numerous items addressed in the supplementary hearing, such as McDonald's tendency to urinate in containers, his medication and dosages, his periods of homelessness, his past abuse, his fear of being close to others, and his living situation). The ALJ's analysis is thorough, and McDonald fails to show any error in this respect that could justify remanding the matter.

For these reasons, the ALJ was not required to obtain an updated medical report and substantial evidence bolsters his conclusions.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that McDonald's Motion for Summary Judgment, (Doc. 16), be **DENIED**, that the Commissioner's Motion, (Doc. 17), be **GRANTED**, and that this case be **AFFIRMED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.

24

R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date:  July 27, 2017                           S/ PATRICIA T. MORRIS
                                               Patricia T. Morris
                                               United States Magistrate Judge



**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 27, 2017                            By s/Kristen Castaneda
                                               Case Manager